## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF NEW YORK

JAMES PICCIONE, an individual, on his own )
behalf and on behalf of all others similarly situated, )   No.
)
     Plaintiff, )   **CLASS ACTION COMPLAINT**
) **AND JURY DEMAND**
v. )
) **CV 09 4395**
INTERMARK COMMUNICATIONS, INC., a )
New York corporation, d/b/a INTERMARK )
MEDIA, and JOHN DOE d/b/a GOOGLE )
PROFITS, )
) **SEYBERT**
     Defendants, )  **ORENSTEIN**

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, James V. Piccione, brings this Class Action Complaint against Intermark

Communications, Inc. (d/b/a Intermark Media) ("Intermark") and John Doe (d/b/a Google

Profits) ("GoogleProfits"), based upon Defendants' practice of deceptively charging Plaintiff and

similarly-situated others for unauthorized services. Plaintiff, for his Class Action Complaint,

alleges as follows upon personal knowledge as to himself and his own acts and experiences and,

as to all other matters, upon information and belief, including investigation conducted by his own

attorneys.

### Parties

1.    Plaintiff James V. Piccione is a Connecticut resident.

2.    Defendant Intermark is an ad network generating online advertisements, consumer traffic

for websites selling products and goods, and conversion optimization for those websites.

Intermark also performs as an affiliate marketer in this online space. On information and belief,

Intermark Communications, Inc., a New York state corporation, operates under the name

Intermark Media, with its headquarters in and principal place of business at 135 Crossways Park

Drive, Suite 203, Woodbury, NY 11797.  It does business in the State of New York and nationwide.

3.      Defendant GoogleProfits is a negative option subscription seller of work-at-home products via online and email solicitations to consumers' home and work computers.  On information and belief, GoogleProfits operates in Arizona with its headquarters and principal place of business at 10115 East Bell Road, Suite 107, Scottsdale, Arizona 85260.  GoogleProfits is not registered with the Arizona Secretary of State as a corporation, LLC or as a trade name of any corporate entity.  It does business online throughout the State of New York and nationwide.

### Jurisdiction and Venue

4.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (d), because (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.  On information and belief, at least 20,000 consumers have been defrauded by Defendants for $250 or more.

5.      The acts and practices alleged in this Complaint are concentrated in and originated in the State of New York or, in the alternative, in the State of Arizona.

6.      Venue is properly laid in the Eastern District of New York, pursuant to Section 28 U.S.C. § 1391(b)(2), as a substantial part of the events, circumstances, and omissions giving rise to these claims occurred in this District.

### Facts Common to All Counts

7.      Americans presently find themselves facing the worst economy in decades, and in these desperate times, ordinary consumers are more than ever subjected to a proliferation of work-at-home offers that promise an ability to easily make thousands of dollars from at-home businesses.  These offers derive from initial representations made through spam email offers, sponsored links, banner ads on internet search pages, and most deceptively, as links in fake news articles and fake

2

blogs. (A representative sample of a fake news article driving traffic to GoogleProfits is attached at Exhibit B). The purpose of each of these initial representations is to drive consumer traffic on the internet to credit card submit landing pages at which a purchase can be made.

8.      These sponsored links, banner ads, fake news articles, and similar methods of gaining a consumer's attention are operated by a group of affiliate marketers and ad networks whose sole objective is to drive traffic to merchant landing pages such as those controlled by GoogleProfits. Intermark acts in this space as an ad network and affiliate marketer and actively drives traffic to GoogleProfits for its own monetary gain.

9.      Intermark contracts directly with GoogleProfits to optimize transaction pages and drive traffic to those pages so as to effectuate the sale of GoogleProfits's product. As such, Intermark knows or should know exactly how the advertising by which these products are offered is framed and presented on these pages.

10.     In fact, beyond having total visibility of the content and offer available on GoogleProfits transaction pages, Intermark works directly with GoogleProfits to "optimize" transaction pages so as to maximize the rate of purchase. (A representative sample of a GoogleProfits website is attached as Exhibit A). Intermark is motivated to take this active role because its revenue from GoogleProfits is based on consumer conversions (purchases) of GoogleProfits's products. This optimization can include changing the design of the website including the color, words used, placement of words, placement of the Terms of Service, and the use of such "pressures" as phrases like "Only 20 Left!" or the use of running timers counting down the minutes left before an offer "expires." Such pressures are fabrications and dynamically inserted into the website at random.

11.     After a consumer is directed by Intermark to a GoogleProfits landing page displaying a work-at-home offer, Defendants push a product purportedly designed to enable consumers to earn "Fast Google Profits" of "$250 - $573 per day working at home with Google."

12.     These landing pages typically contain language describing their offering as one "Seen and Trusted on Google, MSNBC, CNN, USA Today," and other television and online media

outlets. The use of these names and trademarks is both without license from these media entities and is plainly designed to suggest to a consumer that the offering is supported by a reputable entity.

13.     The initial landing page seen by a consumer is bright and welcoming, and promises "Fast Google Profits" and "Fast. Easy. Cash." and "Cash from Google."

14.     This page typically contains a testimonial photo of a consumer that benefitted from Defendants' product. In fact, this photo is a fake, inasmuch as Defendants simply use a stock photo and fabricate the testimonial.

15.     Defendants also use a fake screenshot of a paycheck to represent the significant profits a consumer can realize from the purchase of GoogleProfits's products.

16.     Defendants' landing pages may be reached from embedded links in fake blog testimonials (flogs) and fake news articles with, again, stock photos and testimonials purportedly representing actual consumers from one's own city or state. These consumers relate stories of terrific success using GoogleProfits.

17.     The individuals in Defendants' fake photos are not from the consumer's city or state; in fact, the specific locale represented is dynamically generated by instructions contained in the underlying source code for the screen page presented. That is, "Kevin M." from "Connecticut" is in fact simply a fictitious person whose state name is generated by source code that recognizes and responds to the (Connecticut) IP address of the consumer's computer.

18.     A consumer is required to give GoogleProfits certain personally identifying information (PII) to "Qualify for Your Risk Free Trial Kit." A consumer's submission of his PII enables GoogleProfits to sell this information to other marketers of goods and products. Thus, a consumer actually does not have to "qualify" for anything, but is instead submitting to a lead generation process by which their PII (a "lead") is monetized by GoogleProfits and the consumer unknowingly "consents" to the receipt of additional email offers from an untold number of merchants, *i.e.*, anyone to whom GoogleProfits can sell this information.

4

19.     The product offered by Defendants is promised at a minimal price, usually less than $2.00, which is represented as covering shipping and handling.   Importantly, in order to cover this shipping and handling charge ("Your Risk Free Trial Kit"), Defendants require that consumers give GoogleProfits a credit card number.

20.     A consumer's credit card number is entered into a credit card submit field on an online transaction page (the transaction page most often directly follows the landing page – the order path may be understood as starting with the initial representation that drives traffic to the landing path where a consumer's PII is taken.  A billing or transaction page completes the online order path).

21.     Materially, the only price representation clearly and conspicuously displayed on the credit card submit page or in proximity to the credit card submit box is a line that states "Only $1.97 S&H!"

22.     Calls to action like "Hurry, only 37 Kits Left!" and "Today Only!" are found on these pages.  These phrases are part of a static background image that are saved and displayed every time the page loads on a consumer's browser.

23.     Compelling phrases including "Risk Free," "Free bonus," and other synonyms for free appear in large print scattered about the page.  Thus, a consumer reasonably understands that the shipping and handling of a "risk free trial kit" is an action that will cause them to incur a $1.97 charge on their credit card.  In fact, this price is simply bait for a credit card number that can then be used to impose additional charges on the consumer.

24.     Though the actual price of a product is always material, Defendants hide the real price of their product in small print at the bottom of transaction page or simply do not disclose it all except in the fine print of the Terms and Conditions.

25.     By simply submitting credit card information to Defendants, a consumer unknowingly agrees to a charge of $99 for a CD purportedly containing information that enables a consumer to "Start Making Money Today!"

26.     This fine print states that the one-time fee of $99 is non-refundable.

5

27.     Materially, and wholly absent clear and conspicuous disclosure, a consumer's submission of his credit card number also obligates a consumer to an ongoing negative option subscription in something called "Google Profit Resource" for $47.50 per month. This product or service and its price are not clearly disclosed on either page in the short order path. Nevertheless, this sum is billed to a consumer's credit card within 14 days of submitting an order for a $1.97 CD from GoogleProfits and every month thereafter.

28.     Finally, in addition to the poorly disclosed charges of $99 and $47.50 per month – and in distinct contrast to the clearly disclosed charge of $1.97 for a "Risk Free" trial – a consumer agreeing to this offer is also billed a charge of $7.71 per month. The fine print Terms and Conditions, not presented on either page of the Defendants' offer, reveals that a consumer is to be charged this sum for an undefined second negative option, *i.e.*, access to the "eBay Money Resource Center."

29.     Thus, a consumer reasonably expecting to pay $1.97 for a CD will be charged that sum plus:  1) $99.00, 2) $47.50 per month in perpetuity, and 3) $7.71 per month, also for as long as the consumer fails to notice this charge and object to it.

30.     Only the charge of $1.97 is clearly and conspicuously disclosed to a consumer responding to an offer from Defendants.

31.     GoogleProfits contracts with Intermark to drive traffic to, promote, and help sell its products. Correspondingly, Intermark optimizes, or oversees the creation of, the deceptive advertisements described herein and receives significant revenue from the sale of each poorly-disclosed GoogleProfits product.

32.     Defendant Intermark and Defendant GoogleProfits know or should know that these ads and offers violate clearly established laws requiring, among other seminal concerns, that all material purchase terms be clearly and conspicuously disclosed to consumers.

## The Facts Relating to the Named Plaintiff

33.     During the relevant time period, Plaintiff responded to an email solicitation from Defendants intended to drive consumer traffic to Defendants' sites. Plaintiff did click on the link embedded in the email solicitation and, ultimately, did reasonably understand that he could receive a CD describing a method by which he could get cash from Google. Plaintiff did authorize Defendants to charge him $1.97 in return for this CD.

34.     Plaintiff did not know that Google itself has nothing to do with this product nor did Plaintiff reasonably understand that, by agreeing to pay Defendants $1.97 for a CD, he also consented to be billed for unrevealed products at an undisclosed price for an ongoing period.

35.     Some days after initially agreeing to pay Defendants $1.97 for GoogleProfits's product, Plaintiff did receive a "confirmation" email from GoogleProfits through which he was required to click on a link to confirm his $1.97 order. Plaintiff *did not click on this link* nor did he otherwise respond to GoogleProfits confirming his CD order.

36.     Plaintiff did not authorize Defendants to bill his debit card for these additional charges. When Plaintiff discovered that he was immediately billed a charge of $99.00 (unexpected and also directly contrary to the small print representation in the terms and conditions which describes such billing as occurring "after the 30 day trial"), Plaintiff attempted to call GoogleProfits to cancel this charge.

37.     Plaintiff called repeatedly and was shunted to voicemail many times without ever receiving a return call from GoogleProfits. Persistently, however, Plaintiff kept trying to reach GoogleProfits until he finally did speak with a representative that told him she was in Scottsdale, Arizona.

38.     During this conversation, Plaintiff was told that the $99.00 represented a "non-refundable fee." Objecting to this misrepresentation, Plaintiff asked to speak with a supervisor and was denied.

7

39.     Plaintiff told the GoogleProfits representative that he would not have agreed to pay $99 for this product if he would have clearly understood that this was the actual price for the CD offered. Despite this assertion, Plaintiff was not given a refund from GoogleProfits.

### Class Allegations

40.     Plaintiff seeks certification of a Class and one Subclass under Rule 23(b)(3):

**GoogleProfits Class:** Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of himself and a Class of similarly situated individuals, defined as follows:

> all consumers who submitted credit card information through a form substantially similar to that on which the Plaintiff submitted his credit card information, for the purpose of obtaining GoogleProfits's products or services, and who were charged any amount other than a shipping and handling fee.

**Intermark SubClass:** Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of himself and a Subclass of similarly situated individuals, defined as follows:

> all consumers who submitted credit card information through a form substantially similar to that on which the Plaintiff submitted his credit card information, for the purpose of obtaining GoogleProfits's products or services, that were traceably driven to GoogleProfits website(s) by Intermark or affiliate marketers acting through Intermark.

The following people are excluded from the Class and Subclass: 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current or former employees, officers and directors; and 3) persons who properly execute and file a timely request for exclusion from the class and 4) the legal representatives, successors or assigns of any such excluded persons.

41.     **Numerosity:** The exact number of the members of the Classes is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable.  On information and belief, Defendants has deceived thousands of consumers who fall into the Class and Subclass definition.  Class members can be easily identified through Defendants' records.

42.     **Typicality:** Plaintiff's claims are typical of the claims of other members of the Classes,

as Plaintiff and other members sustained damages arising out of the wrongful conduct of Defendants, based upon the same transactions which were made uniformly to Plaintiff and the public.

43.    **Adequate Representation:**  Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass, and has retained counsel competent and experienced in complex class actions.  Plaintiff has no interest antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff.

44.    **Predominance and Superiority:**  This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the actions of Defendants.  It would be virtually impossible for the individual members of the Classes to obtain effective relief from the misconduct of Defendants.  Even if members of the Classes themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court.  Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

45.    **Commonality:**  There are many questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Class and Subclass.  Common questions for the Classes include, but are not limited to the following:

    (a)    Whether the Defendants' conduct described herein violates New York General Business Law § 349 prohibiting deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service.

(b)     Whether the Defendants' conduct described herein violates Arizona Revised Statutes § 44-1521 *et seq.*, prohibiting the act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby.

(c)     Whether the Defendants' conduct described herein results in unjust enrichment to Defendants and;

(d)     Whether the Defendants' conduct described herein is a breach of contract between Plaintiffs and Defendants.

**COUNT I**
**Violations of New York General Business Law § 349, *et. seq.***
**(on behalf of the Plaintiff and the GoogleProfits Class)**

46.     Plaintiff incorporates by reference the foregoing allegations.

47.     The sale and promotion of "work-at-home" products sold by GoogleProfits is a consumer-oriented act or practice because it is directed towards individuals seeking to increase their personal income.

48.     In deceiving Plaintiff and the Class by creating and supporting advertising that fails to clearly and conspicuously disclose the actual price of its products, and inducing Plaintiff and the Class to proffer payment information based on that misrepresentation, GoogleProfits has engaged in deceptive trade practices in violation of New York General Business Law § 349, *et. seq.*

49.     The price of a consumer product is a material term of any transaction because it is likely to affect a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception related to the price of a consumer product is materially misleading.

50.     The misrepresentation of the price of its products is likely to mislead a reasonable consumer who is acting reasonably under the circumstances.

51.     GoogleProfits has at all times acted willfully in creating and maintaining these deceptive landing pages and has ignored numerous requests for relief from affected consumers.

52.     Plaintiff and the Class have suffered damages as a direct result of Defendants' unlawful acts and practices.

**COUNT II**
**Violations of New York General Business Law § 349, *et. seq*.**
**(on behalf of the Plaintiff and the Intermark SubClass)**

53.     Plaintiff incorporates by reference the foregoing allegations.

54.     The act of driving consumers to GoogleProfits "work-at-home" website by Intermark is a consumer-oriented act or practice because it is directed towards individuals seeking to increase their personal income.

55.     In deceiving Plaintiff and the Subclass by creating, supporting, advertising and driving traffic to an offer that fails to clearly and conspicuously disclose the actual price of its products, and inducing Plaintiff and the Subclass to proffer payment information based on that misrepresentation, Intermark has engaged in deceptive trade practices in violation of New York General Business Law § 349, *et. seq*.

56.     The price of a consumer product is a material term of any transaction because it is likely to affect a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception related to the price of a consumer product is materially misleading.

57.     The misrepresentation of the price of its products is likely to mislead a reasonable consumer who is acting reasonably under the circumstances.

58.     Intermark has at all times acted willfully in creating and maintaining these deceptive landing pages and have ignored numerous requests for relief from affected consumers.

59.     Plaintiff and the Subclass have suffered damages as a direct result of Intermark's unlawful acts and practices.

## COUNT III [ In the alternative to Count I]
### Violations of Arizona Revised Statutes § 44-1521, *et. seq.*
### (on behalf of Plaintiff and the GoogleProfits Class)

60.     Plaintiff incorporates by reference the foregoing allegations.

61.     The sale and promotion of "work-at-home" products allegedly offered by GoogleProfits is a consumer-oriented act or practice because it is directed towards individuals seeking to increase their personal income.

62.     In deceiving Plaintiff and the Class by creating and supporting advertising that fails to clearly and conspicuously disclose the actual price of its products, and inducing Plaintiff and the Class to proffer payment information based on that misrepresentation, Defendant Google Profits have engaged in deceptive trade practices in violation of Arizona Revised Statutes § 44-1521, *et. seq.*

63.     The price of a consumer product is a material term of any transaction because it is likely to affect a consumer's choice of, or conduct regarding, whether to purchase a product.  Any deception related to the price of a consumer product is materially misleading.

64.     The misrepresentation of the price of its products is likely to mislead a reasonable consumer who is acting reasonably under the circumstances.

65.     GoogleProfits has at all times acted willfully in creating and maintaining these deceptive landing pages and have ignored numerous requests for relief from affected consumers.

66.     Plaintiff and the Class have suffered damages as a direct result of GoogleProfits's unlawful acts and practices.

## COUNT IV [In the alternative to Count II]
### Violations of Arizona Revised Statutes § 44-1521, *et. seq.*
### (on behalf of Plaintiff and the Intermark SubClass)

67.     Plaintiff incorporates by reference the foregoing allegations.

68.    The act of driving consumers to GoogleProfits "work-at-home" website by Intermark is a consumer-oriented act or practice because it is directed towards individuals seeking to increase their personal income.

69.    In deceiving Plaintiff and the Subclass by creating, supporting, advertising and driving traffic to an offer that fails to clearly and conspicuously disclose the actual price of its products, and inducing Plaintiff and the Subclass to proffer payment information based on that misrepresentation, Intermark has engaged in deceptive trade practices in violation of Arizona Revised Statutes § 44-1521, *et. seq.*

70.    The price of a consumer product is a material term of any transaction because it is likely to affect a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception related to the price of a consumer product is materially misleading.

71.    The misrepresentation of the price of its products is likely to mislead a reasonable consumer who is acting reasonably under the circumstances.

72.    Intermark has at all times acted willfully in creating and maintaining these deceptive landing pages and have ignored numerous requests for relief from affected consumers.

73.    Plaintiff and the Subclass have suffered damages as a direct result of Intermark's unlawful acts and practices.

### COUNT V
### Restitution/Unjust Enrichment
### (on behalf of the GoogleProfits Class)

74.    Plaintiff incorporates by reference the foregoing allegations.

75.    Plaintiff and the Class conferred a monetary benefit on GoogleProfits.  Defendant has received and retained money belonging to Plaintiff and the GoogleProfits Class resulting from Defendant's billing and collecting of substantial amounts of money in unauthorized credit/debit card charges.

76.    GoogleProfits appreciates or has knowledge of such benefit.

77.     Under principles of equity and good conscience, GoogleProfits should not be permitted to retain the money belonging to Plaintiff and the GoogleProfits Class, which GoogleProfits has unjustly received as a result of their unlawful actions.

78.     Plaintiff and other members of the GoogleProfits Class suffered damages as a direct result of GoogleProfits's conduct.

## COUNT VI
### Restitution/Unjust Enrichment
### (on behalf of the Intermark SubClass)

79.     Plaintiff incorporates by reference the foregoing allegations.

80.     Plaintiff and the Subclass conferred a monetary benefit on Intermark.  Defendant has received and retained money belonging to Plaintiff and the Intermark SubClass resulting from Defendant's billing and collecting of substantial amounts of money in unauthorized credit/debit card charges.

81.     Intermark appreciates or has knowledge of such benefit.

82.     Under principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and the Intermark SubClass, which Intermark has unjustly received as a result of their unlawful actions.

83.     Plaintiff and other members of the Intermark SubClass suffered damages as a direct result of Intermark's conduct.

## COUNT IV
### Breach of Contract
### (on behalf of Plaintiff and the Class and Subclass)

84.     Plaintiff incorporates by reference the foregoing allegations.

85.     Plaintiff entered into a contract to receive a product from GoogleProfits for the cost of shipping and handling only.  Plaintiff entered his credit card information with the understanding

14

that he would only be charged the cost of shipping and handling in exchange for a product from GoogleProfits.

86.     In cramming additional undisclosed charges on the credit/debit cards of Plaintiff and the members of the Class and SubClass, Defendants have breached the contract for the purchase and sale of a product at the clearly disclosed sale price described above.  Plaintiff and the members of the Class and SubClass did not assent to these additional charges and did not reasonably expect that the contract for purchase and sale would include such additional charges.

87.     At all times relevant to this action, Defendants acted willfully and with the intent to breach the contracts they entered into with Plaintiff and the Class.

88.     Plaintiff and the Class have suffered damages as a direct result of Defendants' acts and practices.


**WHEREFORE**, Plaintiff James V. Piccione, on behalf of himself and members of the Class and SubClass, pray for the following relief:

a.      Certify this case as a class action on behalf of the Class and SubClass as defined above and appoint James V. Piccione as class representative and undersigned counsel as lead counsel of this Class;

b.      Enter judgment against Defendants Intermark and GoogleProfits for all monetary, actual, consequential, and compensatory damages caused by their unlawful conduct;

c.      Award Plaintiff and the Class civil penalties and/or punitive damages for all conduct the court finds willful or intentional;

d.      Award Plaintiff and the Class reasonable costs and attorneys' fees;

e.      Award Plaintiff and the Class pre- and post-judgment interest;

f.      Enter judgment for injunctive, statutory and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and,

g.      Award such other and further relief as equity and justice may require.

**JURY DEMAND**

Plaintiff requests trial by jury of all claims that can be so tried.

October 13, 2009.

James V. Piccione, individually and on behalf of a
class of similarly situated individuals,

Steven Teppler
Bar No. ST4670

Will Haselden (*pro hac vice* pending)
Steven Teppler
KAMBEREDELSON, LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654
(312) 589-6370
whaselden@kamberedelson.com
steppler@kamberedelson.com

# EXHIBIT A





# EXHIBIT B

**Jobs: The Economy**

# New York
# FINANCE NEWS

**Google Payout System**
Work From Home On
Your Computer…

## Jobs: Is Working Online At Home The Next Gold Rush?

Posted by Anonymous on August 8, 2009 and filed under Finance. You can follow any responses to this entry through the RSS 2.0. You can leave a response or trackback to this entry from your site.

**ADVERTISEMENTS**

AS SEEN ON: abc AOL CNN NBC USA TODAY



Many sites showcase people making as much as $300 a day working online from home on their computer.

Are **online jobs** the next big thing? For Mary Steadman it sure is. Mary, a mother from San Jose, CA is thriving in the middle of an economic recession working in the comfort of her own home.

*From her website:* "I get paid about $25 for every link I post on Google and I get paid every week… I make around $5,500 a month right now"

Mary's story is a very familiar one in these tough times. She lost her job as an account rep for a manufacturing company and a few days later her husband also was laid off from his job as part of cutbacks due to the bad economy.

"We knew we had to do something, so we put our heads together and started trying online job opportunities." Mary and her husband Kevin wound up getting caught in a few "get rich quick" business opportunities that were nothing more than pyramid schemes before finding something that really worked.

"I realized the best thing to do is go with a big, reputable company that would fair well in the recession. After looking at several different companies, I picked the safest bet… Google."

Online giant Google is a publicly traded company and is worth an estimated $100 Billion. The company has pioneered online search and has changed the way we use the internet.

In a matter of weeks Mary and Kevin had a steady stream of income coming in via checks that were delivered to their home. They happened upon a system called " **Google Payout System** " that taught them how to make money posting links online.

   **Google Payout System** is a risk free course that can teach anyone, regardless of computer skill level to start making money online.

"We were doing pretty good and then we discovered the real trick to making money. We used our common sense with " **Google Payout System** " and really learned the extra tricks so instead of making a couple of hundred bucks here and there we started maximizing the amount we made. It is an extremely easy and simple step by step program."

For those of you that have seen the 'scammy' sites on the internet that promise you can make millions of dollars online Mary warns that this is not the promise being made here and that most of those sites are false representations of earnings you can make.

"We never tell anyone they'll make millions of dollars, in fact I think



Mary Steadman lost her "boring" job as an account rep for a manufacturing company a few months ago. She now makes $5,500 a month by just submitting small text and ad links online to Google. Read her story to learn how she did it and how you can do the same.

**Step 1:**
Get **Google Payout System**

**Step 2:**
Post links given to you by Google

**Step 3:**
Cash the checks Google sends.

**How To Beat The Recession: Work At Home**
Google pays out US tax-payers with $9?/hour jobs

**Read More** ››

**I Make $5000 A Month Posting Links Online**
After Getting Fired I Found A Home Job Making $5k A Month!

**Read More** ››

**Work At Home $87/Hour**
Easy Work From Home System. Risk Free

**Read More** ››

**I'm Rich You're Not…**
I Made Tons Of Cash Online. Pretty Easy

**Read More** ››

**I Make $173 A Day Posting Links Online**
How I went from a job to riches working from home

**Read More** ››



**WHAT RECESSION?**
Work at home and make more than you do at your job.

"We never tell anyone they'll make millions of dollars, in fact I think this is the ONLY online system that says you probably WON'T make millions, but you can generate a legitimate income from home like I do that replaced my full time job."

Getting started is simple. Following these simple steps below is all you need to do to get started.

**Step 1:** Get <u>Google Payout System</u>, only pay the $1.95 for shipping.

**Step 2:** Follow the directions on Easy Google Payout System that basically shows you how to and set up a Google account. You need them both. Then they will give you the website links to post. Start posting those links. Google tracks everything.

Associated Links:
<u>Google Payout System</u> official site



# Read Responses for
Is Working Online At Home The Next Gold Rush?

***Diane* says:**                     Sunday, June 21 2009 at 7:55 pm
I saw this on the news. How lucky is she to have found this opportunity!?!?!

***Marco* says:**                     Sunday, June 21 2009 at 8:33 pm
The timing of this couldn't be better, my wife and I are struggling too and this could be our answer.

***Mikey* says:**                     Sunday, June 21 2009 at 9:12 pm
Thanks for the info, just started this 3 weeks ago. I've gotten 2 checks for a total of $1900, pretty cool.

***Stephen* says:**                     Sunday, June 21 2009 at 5:52 pm
Is this for real? I tried one thing and it didn't pan out. I made about $500 a month but that was 2 years ago. I'm going to give this a shot.

***Mary* says:**                     Sunday, June 21 2009 at 1:33 pm
I think this is great and will come in really handy right now. I'm not the best computer user but I think I can post links!!! :)

***Davis* says:**                     Sunday, June 21 2009 at 9:16 pm
Just a quick notice about this thing. It does work but you have to be able to use a computer at least somewhat. If you can use email, etc. then you'll be fine.

***Mom* says:**                     Sunday, June 21 2009 at 11:33 am
Holy cow Mary! Thanks for posting that screen shot, you just gave me the inspiration I needed. Wow! :-)

***Damo* says:**                     Sunday, June 21 2009 at 2:18 am
@Thomas, I'm using it now and it's working pretty well actually! I paid a dollar for shipping, got it in a few days, signed up for my <u>Google account</u> and have been cranking along ever since. My first week I made a whopping $268 and the second week I doubled that then it kinda snowballed to $300+ a day! I'm gonna grow this puppy as big as I can. Here's a screen shot of my Google stats, my wife is in shock.

Google

**Damo says:**               Sunday, June 21 2009 at 2:18 am

@Thomas, I'm using it now and it's working pretty well actually! I paid a dollar for shipping, got it in a few days, signed up for my Google account and have been cranking along ever since. My first week I made a whopping $298 and the second week I doubled that then it kinda snowballed to $300+ a day! I'm gonna grow this puppy as big as I can. Here's a screen shot of my Google stats, my wife is in shock.



**Thomas says:**               Sunday, June 21 2009 at 9:11 am

Has anyone tried this yet? Looks promising.

**Wanda says:**               Sunday, June 21 2009 at 9:47 am

I just got my first check for $2800.00 from Google! How cool is that it took about 2 weeks for me to get the first check.

**Sheila says:**               Sunday, June 21 2009 at 9:52 am

Well, I'm definitely interested... this could be just what I need right now.

This publication provides the Author's opinions and neither the Publisher nor the author intends to render legal, accounting, financial, business or other professional advice with this publication. With regards to licensing of a business enterprise, any legal accounting or tax matters, Author and publisher is an Affiliate of the company offering the business opportunity and are remunerated by advertiser. Author and publisher strongly suggest that the reader seek the services of appropriate licensed business, financial and or legal professionals before proceeding with any actions and comply with the local, state and federal licensing and guideline requirements wherein the reader resides or conducts business.

Google is in no way associated with this website. The Publisher and Author disclaim any personal liability, loss or risk incurred as a consequence of the use and application of the offer, either directly or indirectly, of any advice, information or methods presented in this publication. Individual comments are directed and not the opinion of Author or Publisher and not liable for their comments and opinions.

*INCOME CLAIM WARNING. Testimonials do not result typical result. Photographs or images are depict or of individuals and payment methods. These income examples are representative of some of the most successful participants in the program. Some individuals purchasing the program may make little or NO MONEY AT ALL. These claims are not a guarantee of your income, nor are they typical of average participants. Individual results will vary greatly and in accordance to your input, determination, hard work, and ability to follow directions. No person or company can guarantee profits or freedom from loss.

Pricing and Fees Terms for "Google Profits": If you subscribe to a Negative Option service on this site that requires payment of any fee, you, herein referred to as Subscriber, agree to pay all fees associated with such service, including the free trial shipping and handling fee, the one-time fee and the recurring fee. Subscriber agrees to pay today the free trial shipping and handling fee of $1.97 to begin subscriber's trial membership. Subscriber has thirty days from the date of enrollment to cancel trial membership by calling our customer care department at 1-866-995-9812 to cancel their trial subscription and to be issued an authorization number for return of the Google Profits disc. Subscriber must clearly write the authorization number on the outside of the package and return the CD to the address given by the customer care department within thirty days from the date of enrollment or does not promptly return the disc with authorization number according to the terms above. Subscriber agrees to pay a one time fee of $99.00, which will be billed on Day thirty one from the date of enrollment. Once the free trial shipping and handling fee has been paid and once Subscriber does not cancel within the thirty day Trial period, the one time fee will be NON REFUNDABLE. In addition, the subscriber will be provided access to an online Resource Center which will bill at $47.50 on the fifteenth day from the date of enrollment and will rebill every thirty one days at $47.50 per month until cancelled by calling 1-866-995-9812. If for any reason, Subscriber's credit card company refuses to pay the amount billed for the service, Subscriber agrees that we may, at our option, suspend or terminate the subscription to the service and require the Subscriber to pay the overdue amount by other means acceptable to us. We may charge a fee for reinstatement of suspended or terminated accounts. You have also been enrolled into a seven (7) day trial to the eBay Money Resource Center, should you choose not to cancel your eBay Money Resource Center, you will be billed seven dollars and seventy one cents ($7.71) each month for the eBay Money Resource Center. If you wish to cancel your eBay Money Resource Center subscription please call 1-800-215-1702 to cancel.